UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GABRIELLE BREITENBUCHER,

            Plaintiff,

   - against -

WAL-MART STORES, INC.,

            Defendant.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-6633 (RRM) (AYS)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Plaintiff Gabrielle Breitenbucher brings this action pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332, asserting negligence and nuisance claims based on injuries she allegedly sustained when she slipped and fell in a store operated by defendant Wal-Mart Stores East, LP ("Wal-Mart").  Before the Court is Wal-Mart's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Def.'s Mot. (Doc. No. 18).)  For the reasons set forth below, Wal-Mart's motion is granted and the case is dismissed.

## BACKGROUND

      The following facts are undisputed unless otherwise noted and are drawn from the parties' Local Rule 56.1 Statements of Material Facts, as well as evidence submitted by the parties in connection with the motion for summary judgment.  (*See* Def.'s 56.1 (Doc. No. 20); Pl.'s 56.1 (Doc. No. 25).)  Breitenbucher adopted Wal-Mart's Statement of Material Facts, representing that she "does not dispute [its] synopsis/summary of her testimony or the testimony of her children," and that she only "wishes to add additional facts." (Pl.'s 56.1 ¶ 1.) Accordingly, citations to Wal-Mart's Statement of Material Facts are undisputed.  Wal-Mart submitted a response to Breitenbucher's 56.1 statement, which largely states that the additional

facts she includes do not present a genuine issue to be tried. (Def.'s 56.1 Response (Doc. No. 27)).)

On July 12, 2016, at approximately 10:30 p.m., Breitenbucher entered a Wal-Mart store in Farmingdale, New York, with her 22-year-old son, Nicholas, and her nine-year-old daughter, Gabriella.[1] (Def.'s 56.1 ¶¶ 1, 5.) Breitenbucher asked a Wal-Mart employee for the location of the sporting goods department, as she was interested in purchasing a tent. (*Id.* ¶¶ 5, 6; Pl.'s 56.1 ¶ 1.) The employee pointed her in a direction that led her through an aisle displaying bicycles for sale. (Def.'s 56.1 ¶¶ 6–7; Pl.'s 56.1 ¶ 1.) As Breitenbucher followed her children through the aisle, (Def.'s 56.1 ¶ 7), she noticed that "the bigger bicycles were hanging over[head] and the smaller ones were on the side." (Pl.'s 56.1 ¶ 1 (citing Breitenbucher Dep., Ex. E. to Def.'s Mot. (Doc. No. 19-5) at 16:15–19).) She was aware of where she was walking and nothing obstructed her view of the aisle floor. (Def.'s 56.1 ¶ 8.) In fact, Breitenbucher recalled that the floor was "very shiny." (Breitenbucher Dep. at 19:8; Pl.'s 56.1 ¶ 2.) Although she did not observe anything on the floor at the time and thought the aisle was "clear," she began to feel her right foot slip in front of her. (Breitenbucher Dep. at 18:3–9, 19:4–5; Def.'s 56.1 ¶ 9; Pl.'s 56.1 ¶ 1.) As she tried to catch herself, she fell onto her left knee. (Def.'s 56.1 ¶ 10; Breitenbucher Dep. at 19:24–25, 20:2.)

After recovering from the fall, Breitenbucher discovered that she had slipped on a "flimsy plastic vinyl kind of material," "green with white" in color. (Breitenbucher Dep. at 24:20–24; Def.'s 56.1 ¶ 12; Pl. 56.1 ¶ 2.) The item was thereafter identified as a tag or "spec sheet," which is placed in the spokes of a bicycle to provide identifying information, such as the name and size

---

[1] Wal-Mart's Statement of Material Facts contains one reference to July 14, 2016, as the relevant date, (Def.'s 56.1 ¶ 1), but the Court notes that the parties stipulated the date as July 12, 2016. (*See* Breitenbucher Dep., Ex. E to Def.'s Mot. (Doc. No. 19-5) at 9:12–22.) In any event, the discrepancy has no bearing on the Court's analysis.

2

of the bike.  (Def.'s 56.1 ¶¶ 2, 13, 24.)  According to Jocklene McFarlan, an assistant manager of the Farmingdale Wal-Mart store, such tags or spec sheets are attached to bicycles' spokes during assembly by a third party.  (Def.'s 56.1 ¶¶ 21, 24.)

David Tennant, a former assistant manager who was responsible for the bicycle department at the time of the accident, stated that the tag at issue is already attached to bike wheels when they arrive from the manufacturer.  (Def.'s 56.1 ¶¶ 21, 25–26; Pl.'s 56.1 ¶¶ 4, 7.)  In the past, Tennant had observed customers and employees remove these tags from bikes to check prices when a Wal-Mart associate did not have a hand scanner.  (Pl.'s 56.1 ¶ 13; Tennant Dep., Ex. K to Def.'s Mot. (Doc. No. 19-11) at 33:8–10, 33:22–25.)  Tennant testified that during his time as an assistant manager, the Farmingdale store started to place prices on the bikes themselves "so [the tags] would not be removed." (Tennant Dep. at 40:9–12.)  However, Tennant stated that he had "rarely" seen such a tag on the floor, and that if he had, he would have picked it up as required by Wal-Mart's rules.  (Def.'s 56.1 ¶ 27–28.)  Tennant also explained that assistant managers are responsible for "touring" the store, or walking around at least once per hour and inspecting their designated departments.  (Pl. 56.1 ¶ 8; Tennant Dep. at 18:17–23, 19:4–22.)

Breitenbucher alleges that the spec sheet was in the spokes of a bicycle suspended above the aisle before it fell to the floor and caused her to fall.  (Def.'s 56.1 ¶ 2.)  However, at her deposition, she admitted that she does not know how the tag or spec sheet she slipped on came to be on the floor, or how long it was there prior to her accident.  (Def.'s 56.1 ¶¶ 14, 15.)  Nicholas and Gabriella each testified that they did not see anything on the floor before their mother fell. (Def.'s 56.1 ¶¶ 16, 20.)

3

Breitenbucher filed a complaint against Wal-Mart on March 7, 2017, in the Supreme Court of the State of New York, Suffolk County, alleging claims of negligence, as well as private and public nuisance. (Compl., Ex. A to Def.'s Mot. (Doc. No. 19-1).) Wal-Mart subsequently removed the case to this Court on the basis of diversity jurisdiction. (Notice of Removal (Doc. No. 1) at 2–3.)

Breitenbucher alleges that Wal-Mart negligently and recklessly created the dangerous condition that caused her to fall and that it had actual and constructive notice of that condition, yet permitted it to exist "for an unreasonably long period of time" prior to the accident. (Compl. ¶¶ 21–23; Bill of Particulars, Ex. D to Def.'s Mot. (Doc. No. 19-4) ¶ 7–8.) Breitenbucher also contends that Wal-Mart failed to properly maintain and inspect the store, and that it failed to warn the public about hazards. (Compl. ¶¶ 24–25.) Additionally, she asserts that the spec sheet constituted "a public and private nuisance and a trap for the unaware." (Compl. ¶ 34.) She seeks damages, interest, costs, and disbursements, alleging that she has suffered permanent physical injuries, incurred medical expenses, and "has been unable to attend to her usual occupation and/or avocation in the manner required." (Compl. at 12, ¶¶ 26–29; Bill of Particulars ¶ 9.)

Following the completion of discovery, Wal-Mart filed the instant motion for summary judgment. Wal-Mart asserts that the evidence does not support liability for negligence, as nothing in the record suggests that it created or had actual notice of a dangerous condition. (Def.'s Mot. (Doc. No. 22) at 4–5.) Wal-Mart also contends that Breitenbucher cannot prevail on a theory of constructive notice, as she has not demonstrated that the hazard was visible and apparent, nor has she shown a recurring dangerous condition. (*Id.* at 6–8.) At Breitenbucher's request, Wal-Mart conducted a search for any accidents that may have resulted from a spec sheet or other informational material from a bicycle in the Farmingdale store from July 12, 2013,

4

through July 12, 2016.  (Def.'s 56.1 ¶ 29.)  Wal-Mart represents that it is unaware of any such accidents occurring in this three-year period prior.  (*Id*.; Discovery Response, Ex. L to Def.'s Mot. (Doc. No. 19-12) at 1–2.)  Wal-Mart does not address Breitenbucher's second cause of action for public and private nuisance.

In a two-page opposition to the motion, Breitenbucher argues that a genuine issue of material fact exists on the issue of whether Wal-Mart had constructive notice.  (Pl.'s Opp'n (Doc. No. 26) at 1–2.)  She asserts that spec sheets constitute a recurring hazard, and that Wal-Mart employees could have easily remedied the danger that caused her injury.  (*Id*. at 2.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it may impact the "outcome of the suit under the governing law."  *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed," and the Court must draw all "justifiable" or reasonable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at 255 (citations omitted); *see also Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) ("[T]he court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the

factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." (citations omitted)).

The movant "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *SS Grocery, Inc. v. U.S. Dep't of Agric., Food & Nutrition Serv.*, 340 F. Supp. 3d 172, 179 (E.D.N.Y. 2018) (citing, *inter alia*, *Celotex Corp.*, 477 U.S. at 330–31). However, where, as here, "summary judgment is sought 'against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claims.'" *Casiano v. Target Stores*, No. 06-CV-6286 (NG), 2009 WL 3246836, at *3 (E.D.N.Y. Sept. 24, 2009) (quoting *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)).

Once the moving party has demonstrated that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (internal quotation marks omitted) (citation omitted); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (collecting cases and stating that the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation"). In other words, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

## DISCUSSION

### I. Negligence

The parties agree that New York law governs Breitenbucher's substantive claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 12–13 (2d Cir. 2008) (summary order) (applying New York

substantive law in a slip-and-fall case brought under the court's diversity jurisdiction). To establish a *prima facie* case of negligence in New York, a plaintiff must show that: "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a proximate result of that breach." *Stepton-Howard v. Rite Aid Corp.*, No. 16-CV-1352 (SJF) (AYS), 2017 WL 3017191, at *3 (E.D.N.Y. June 13, 2017) (internal quotation marks omitted) (citations omitted); *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006).

It is undisputed that Wal-Mart has a duty to maintain safe premises and that Breitenbucher's injuries were the proximate result of her slipping on the spec sheet. The only question before the Court with respect to the negligence claim is whether a triable issue of fact exists concerning Wal-Mart's alleged breach of its duty of care. Under New York law, to show a breach of duty in a slip-and-fall case, "the plaintiff must show that the defendant either created the condition which caused the accident, or . . . had actual or constructive notice of the condition." *Davis v. United States*, No. 17-CV-400 (ILG), 2019 WL 203108, at *2 (E.D.N.Y. Jan. 15, 2019) (internal quotation marks omitted) (citation omitted).

### A. Creation of The Hazard

To establish that a defendant created a hazard, a plaintiff must show "some affirmative act" on the part of the defendant. *Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014) (internal quotation marks omitted) (citation omitted); *see also Taylor v. Manheim Mktg.*, No. 15-CV-1950 (PKC) (RER), 2017 WL 5905544, at *3 (E.D.N.Y. Nov. 30, 2017), *aff'd sub nom. Taylor v. Manheim Remarketing, Inc.*, 752 F. App'x 94 (2d Cir. 2019) (summary order); *Olsen v. K Mart Corp.*, No. 04-CV-3648 (JMA), 2005 WL 2989546, at *4 (E.D.N.Y. 2005) (Plaintiffs must show that "the creation was an affirmative, deliberate and intentional act."

(internal quotation marks omitted) (citation omitted)). "Evidence that a defendant merely permitted a dangerous condition to exist is insufficient to demonstrate that the defendant created a hazardous condition." *Stepton-Howard*, 2017 WL 3017191 at *3; *see also Lyman v. PetSmart, Inc.*, No. 16-CV-4627 (JCM), 2018 WL 4538908, at *6 (S.D.N.Y. Sept. 21, 2018) ("passive activity" does not amount to an affirmative act (internal quotation marks omitted) (citation omitted)); *Ricci v. Wal-Mart Stores E., LP*, No. 16-CV-6920 (JCM), 2018 WL 4308556, at *6 (S.D.N.Y. Sept. 10, 2018) (granting summary judgment to Wal-Mart where a plaintiff slipped on a hanger and there was no evidence "regarding what caused the hangers to be on the floor"); *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004) (granting summary judgment to defendant given the absence of any evidence that the defendant created the hazard (a plastic rope in the parking lot)).

Although circumstantial evidence may be sufficient "if it creates an inference that Defendant created the condition through affirmative acts," plaintiffs "cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard." *Decker v. Middletown Walmart Supercenter Store #1959*, No. 15-CV-2886 (JCM), 2017 WL 568761, at *5 (S.D.N.Y. Feb. 10, 2017) (internal quotation marks omitted) (citations omitted). Moreover, where the undisputed facts "show that there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other," the plaintiff will not necessarily prevail. *St. Paul Mercury Ins. Co. v. Pepsi-Cola Bottling Co. of New York, Inc.*, 04-CV-360 (DGT), 04-CV-2556 (DGT), 2007 WL 2262889, at *7 (E.D.N.Y. Aug. 2, 2007) (quoting *Bernstein v. City of New York*, 69 N.Y.2d 1020, 1021–22 (N.Y. 1987)).

Breitenbucher fails to establish that Wal-Mart created the alleged hazard. The facts here are analogous to those in *Lionel v. Target Corp.*, 44 F. Supp. 3d 315 (E.D.N.Y. 2014). There, the plaintiff slipped on the lid of a food container in a Target store and argued that the presence of a lid and paper towels permitted a reasonable inference that employees had negligently left these items on the floor while cleaning. *Id*. at 319. The court held that this line of reasoning, without supporting evidence, was speculative, and suggested that the existence of plausible alternatives – including that the items may have been left by a customer – undermined the plaintiff's theory. *Id*. at 319 (noting that the plaintiff's burden "is not merely to proffer a plausible theory, but to present evidence" (citation omitted)); *see also Janetos v. Home Depot U.S.A., Inc.*, No. 09-CV-1025 (AKT), 2012 WL 4049839, at *10 (E.D.N.Y. Sept. 13, 2012) (While a particular "narrative provides a plausible explanation for what may have occurred, it is not conclusive for summary judgment purposes."). Here, as in *Lionel*, not only is there no evidence that an employee removed the spec sheet or otherwise caused it to be on the floor, but there is testimony to support the equally likely alternative that a customer may have removed the spec sheet. As the record is devoid of any evidence regarding how the spec sheet came to be on the floor, no reasonable juror could find that Wal-Mart affirmatively created a dangerous condition.

### B. Actual Notice

Absent evidence that the defendant created the hazard, a plaintiff may argue that the defendant had actual notice. Actual notice requires "that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition." *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) (summary order); *see also Strass v. Costco Wholesale Corp.*, No. 14-CV-6924 (PKC) (VMS), 2016 WL 3448578, at *4 (E.D.N.Y. June

9

17, 2016) (The plaintiff "must prove that the defendants were, in fact, aware of the dangerous condition." (quoting *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 332 (E.D.N.Y. 1998))). Courts have granted summary judgment for defendants where there was no evidence that the defendant's employees had observed the hazard prior to the plaintiff's fall or that the defendant had received reports of the dangerous condition. *See Ricci*, 2018 WL 4308556, at *6 (citing *Henry v. Target Corp.*, No. 16-CV-8416 (JPO), 2018 WL 3559084, at *4 (S.D.N.Y. July 24, 2018); *Decker*, 2017 WL 568761, at *6).

Breitenbucher fails to adduce any evidence that Wal-Mart was aware of any danger posed by spec sheets. She does not submit evidence that employees observed the spec sheet on the floor prior to her fall or that Wal-Mart received complaints about spec sheets. In fact, Wal-Mart is not aware of any similar accidents that occurred within the three years prior to Breitenbucher's fall. Accordingly, Breitenbucher has failed to raise a triable issue as to whether Wal-Mart had actual notice.

### C. Constructive Notice

A plaintiff may establish constructive notice using two distinct theories of liability. First, a plaintiff may show that (1) the defect was visible and apparent, and (2) it existed for a sufficient length of time prior to the accident to permit the defendant's employees to discover and remedy it. *See Urrutia v. Target Corp.*, 681 F. App'x 102, 104 (2d Cir. 2017) (summary order); *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997) (citing *Gordon v. Am. Museum of Nat. Hist.*, 67 N.Y.2d 836, 837 (N.Y. 1986)). Alternatively, a plaintiff may show that the defendant was on constructive notice because it had knowledge of a dangerous recurring condition. *See Gonzalez*, 299 F. Supp. 2d at 193; *Fay v. Bass Hotels & Resorts, Inc.*, No. 00-CV-9107 (MBM), 2003 WL 21738967, at *5–6 (S.D.N.Y. July 28, 2003).

10

### a. Visible and Apparent Hazard

As to the first theory of liability, a defendant's general awareness of a hazardous condition is inadequate to establish that it was visible and apparent, and that it existed for a sufficient period of time for employees to discover and remedy it. Indeed, the plaintiff must show "not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the 'particular condition' at issue." *Taylor*, 121 F.3d at 90 (quoting *Gordon*, 67 N.Y.2d at 838); *see also Watts v. Wal-Mart Stores E., LP*, No. 16-CV-4411 (KMK), 2018 WL 1626169, at *5 (S.D.N.Y. Mar. 29, 2018); *Taylor*, 2017 WL 5905544 at, *4. For example, in *Kraemer v. K-Mart Corp.*, 641 N.Y.S.2d 130 (2d Dep't 1996), the Second Department affirmed summary judgment for the defendant where the plaintiff slipped on a piece of a store ticket in K-Mart's shoe department, reasoning that the defendant's "general awareness of the fact that price and size tickets did at times fall from its shoes is insufficient to establish constructive notice of the particular condition which caused the plaintiff's fall." *Id*. at 131 (citations omitted).

Further, courts in the Second Circuit regularly grant summary judgment for defendants and find that a hazard was not visible and apparent when the plaintiff did not see the defect prior to her fall. *See e.g.*, *Santora v. Costco Wholesale Corp.*, No. 17-CV-4415 (CS), 2018 WL 5886442, at *4 (S.D.N.Y. Nov. 8, 2018) (granting summary judgment for defendants where there was "no evidence that anyone, including Plaintiff, observed the spill before Plaintiff slipped"); *Watts*, 2018 WL 1626169, at *6; *Decker*, 2017 WL 568761, at *7; *cf. Urrutia*, 681 F. App'x at 102–04 (vacating an award of summary judgment for the defendant where the plaintiff testified that she saw liquid on the defendant store's floor and told her son about it before she fell).

Here, Breitenbucher has not presented facts that would allow a reasonable jury to find that the spec sheet was visible and apparent. In her motion papers, she contends that the "thinness" of the spec sheet "would not have permitted plaintiff to have known it was there," yet in the next sentence, she insists that "[t]he color of the tag would have enabled a store employee from [*sic*] seeing it, had they been actively monitoring what was happening in the department." (Pl.'s Opp'n at 2.) The Court is unconvinced by this internally inconsistent argument. As Breitenbucher concedes, she herself did not see the spec sheet before she fell despite testifying that she was "aware" as she was walking and had an unobstructed view of the ground; in fact, she had a specific recollection that the floors were "very shiny." (Def.'s 56.1 ¶ 8, Pl.'s 56.1 ¶ 2.) Neither of Breitenbucher's children saw the spec sheet either. Thus, there is no evidence in the record to establish that the spec sheet was visible and apparent.

Additionally, the evidence must establish "either how the substance got there or how long it was there before the fall." *Shimunov v. Home Depot U.S.A, Inc.*, No. 11-CV-5136 (KAM), 2014 WL 1311561, at *5 (E.D.N.Y. Mar. 28 2014). A plaintiff's failure to adduce facts concerning the duration of the existence of the dangerous condition "is fatal to her claim of constructive notice." *Decker*, 2017 WL 568761, at *7 (quoting *Quarles*, 997 F. Supp. at 332); *see also Ricci*, 2018 WL 4308556, at *9 (granting summary judgment for Wal-Mart, in part due to the "absence of facts" to negate the possibility that a hanger had been on the floor "only minutes or seconds before" plaintiff tripped on it); *Taylor*, 2017 WL 5905544, at *4; *Casierra v. Target Corp.*, 09-CV-1301 (JG) (MDG), 2010 WL 2793778, at *3 (E.D.N.Y. July 12, 2010) ("To get to a jury, [the plaintiff] is required to provide some basis for an inference that the spill was there long enough to blame [the defendant] for the accident."); *Hammond–Warner v. United States*, 797 F. Supp. 207, 211 (E.D.N.Y. 1992) (granting defendant's motion

for summary judgment where the plaintiff did not "know how long the substance on which she allegedly slipped had been on the sidewalk prior to her fall").

Courts accept circumstantial evidence suggesting how long the hazard may have existed. In *Negri v. Stop and Shop, Inc.*, 65 N.Y.2d 625, 626 (N.Y. 1985), for example, the New York Court of Appeals held that dismissal was improper where a "witness in the immediate vicinity" had not heard anything fall during the 15 to 20 minutes prior to the accident, and where the alleged hazard appeared "dirty and messy," as a factfinder could infer that it had been present for some time. However, here, Breitenbucher presents no evidence – circumstantial or otherwise – suggesting that the spec sheet was on the floor for a sufficient amount of time for an employee to discover it. Breitenbucher does not state that the spec sheet was dirty or worn, or that it appeared in any other condition that would permit an inference that it had been on the floor for an appreciable amount of time. *See Gonzalez*, 299 F. Supp. 2d at 193 (noting the absence of evidence that the hazard – a rope – was dirty or worn). Although Wal-Mart's policy required assistant managers to "tour" the store hourly, this evidence would, at most, establish that the condition had not existed for over an hour, which would not show that it existed long enough for Wal-Mart's employees to spot it. *See Lionel*, 44 F. Supp. 3d at 323 (Evidence that the area in which the plaintiff fell was "regularly traversed" by the defendant's employees was insufficient to show that the condition existed "long enough that an employee should have walked through the area and observed it." (citation omitted)). Breitenbucher offers no evidence to negate the possibility that a customer may have removed the spec sheet from a bicycle mere moments before she entered the aisle. *See Gordon*, 67 N.Y.2d at 838 (dismissing an action for lack of construction notice because "on the evidence presented, the piece of paper that caused plaintiff's fall could have been deposited there only

13

minutes or seconds before the accident").

Breitenbucher cites to *Rose v. Da Ecrib USA*, 259 A.D.2d 258 (1st Dep't 1999), to support the proposition that constructive notice has been inferred where there is evidence that employees were "in the immediate vicinity of the dangerous condition and could easily have noticed and removed it." (Pl.'s Opp'n at 2 (quoting *Rose*, 259 A.D.2d at 260).) However, as other courts have recognized, *Rose* did not hold that "notice could be inferred simply from the proximity of defendants' employees"; rather, it held that "notice could be inferred from proximity *combined* with other evidence that the hazard was present for an extended period of time." *Tingling v. Great Atl. & Pac. Tea Co.*, No. 02-CV-4196 (NRB), 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003) (emphasis in original) (citations omitted). In *Rose*, there was evidence that an employee was repeatedly walking through the passageway where the plaintiff fell, as well as evidence that no other customer entered the area 15 minutes before the accident. 259 A.D.2d at 259–260. Here, distinct from *Rose*, the record contains no evidence from which a jury could reasonably infer that the spec sheet was present for an appreciable length of time. Thus, even assuming that the spec sheet was visible and apparent, absent evidence regarding duration, Breitenbucher's theory of constructive notice necessarily fails.

### D. Recurring Condition

A plaintiff may also establish constructive notice by showing that "an ongoing and recurring dangerous condition existed in the area of the accident which was routinely left unaddressed by the landlord.'" *Gonzalez*, 299 F. Supp. 2d at 193 (internal quotation marks omitted) (citation omitted). New York law provides that "when a landowner has actual knowledge of the tendency of a particular dangerous condition to reoccur, he is charged with constructive notice of each specific reoccurrence of that condition." *Quarles*, 997 F. Supp at 333

(internal quotation marks omitted) (citation omitted). While a plaintiff need not establish "knowledge of the existence of the exact [hazard] on which the plaintiff fell, they do need to show that defendant had . . . knowledge of the particular dangerous condition that is qualitatively different from a mere general awareness that a dangerous condition may be present." *Ricci*, 2018 WL 4308556, at *10 (internal quotation marks omitted) (citing *Gonzalez*, 299 F. Supp. 2d at 193).

Even if Tennant's testimony established that spec sheets frequently fell in the aisle – rather than just "rarely" – this evidence alone would not establish a recurrent condition. For example, in *Ricci v. Wal-Mart Stores E., LP*, the court found that testimony by several employees that they commonly observed hangers on the floor showed, "[a]t best," a "general awareness of falling hangers," but was insufficient to show knowledge of a "distinctive recurring hazard that [the defendant] routinely failed to address," as there was no evidence of "an uncommon amount of fallen hangers or hanger-related accidents in the specific aisle [the plaintiff] fell in." No. 16-CV-6920 (JCM), 2018 WL 4308556, at *11–12 (S.D.N.Y. Sept. 10, 2018); *see also Polvino v. Wal-Mart Stores, Inc.*, No. 03-CV-950 (WMS), 2006 WL 2711461, at *4 (W.D.N.Y. Sept. 20, 2006) (testimony from employees that hangers were "frequently" in the aisles demonstrated general awareness of a hazard, but was insufficient to sustain a "recurrent condition" claim); *Gonzalez*, 299 F. Supp. 2d at 195 (Where the plaintiff tripped over a plastic rope in a store parking lot, the Court found that even "[a]ssuming that the defendants had a general awareness that boxes and other debris accumulated in the parking lot, they would not have been put on notice that injuries caused by the particular condition at issue here were foreseeable.").

15

Breitenbucher argues that her injury was caused by a recurring dangerous condition, relying on Tennant's testimony that he had seen tags or spec sheets on the floor "rarely," and arguing that "rarely" implies more than once. (Pl.'s Opp'n at 1.) This testimony is insufficient to establish that Wal-Mart was on notice that injuries caused by spec sheets were foreseeable, or that they created a dangerous condition that should have been remedied. The record reflects that Wal-Mart had not received even one report of a similar accident in the three years prior to Breitenbucher's fall. At most, then, Tennant's testimony amounts to evidence of general awareness of a potential hazard, falling short of the necessary particularity required to show a recurring condition.

The cases Breitenbucher cites do not alter the Court's conclusion. Breitenbucher's reliance on *Black v. Kohl's Dep't Stores*, 914 N.Y.S.2d 469 (3d Dep't 2011), to establish a recurring condition is unavailing. *Black* concerned claims by a plaintiff who tripped on a purse in a store where customers would "commonly knock merchandise onto the floor," and the record included testimony from customers that the relevant store department was in "continual disarray" and that "there was always an assortment of purses laying on the floor," making it difficult to navigate. 914 N.Y.S.2d at 471. Here, the evidence relied upon by Breitenbucher – that the spec sheets "rarely" fell on the floor – is the opposite of that in *Black*. Under these distinct circumstances, the record is insufficient to establish the existence of a recurring condition to warrant charging Wal-Mart with constructive notice.

Accordingly, because the Court finds no genuine issue of material fact concerning whether Wal-Mart created the alleged hazard, whether it had actual notice, and whether it was on constructive notice, Wal-Mart's motion for summary judgment is granted with respect to the negligence claim.

##  II. Public and Private Nuisance

Breitenbucher also asserts that the spec sheet constituted a "trap" amounting to a private and public nuisance. A private nuisance threatens one or relatively few individuals, and its "essential feature" is "interference with the use or enjoyment of land." *Janki Bai Sahu v. Union Carbide Corp.*, 528 F. App'x 96, 101 (2d Cir. 2013) (summary order) (internal quotation marks omitted) (citations omitted). By contrast, a public nuisance concerns a "substantial interference with a right common to the public," and it must involve a "particular harm suffered by plaintiff different in kind from that suffered by the community at large as a result of that public nuisance." *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 428 (E.D.N.Y. 2017) (citation omitted). Under New York law, the elements of a public and private nuisance are "generally the same." *Cangemi v. United States*, 939 F. Supp. 2d 188, 205 (E.D.N.Y. 2013). Both require intentional or negligent conduct on the part of a defendant. *See Hicksville Water Dist. v. Philips Elecs. N. Am. Corp.*, No. 2-CV-4442 (ADS) (ARL), 2018 WL 1542670, at *7 (E.D.N.Y. Mar. 29, 2018).

Here, Breitenbucher does not allege that Wal-Mart intentionally caused her to fall, and the Court has concluded that she fails to establish negligence. "[W]here, as here, the condition alleged to constitute a nuisance has its origin in negligence, the nuisance claim must fail in the absence of proof of the property owner's negligence." *Placide v. Yadid, LLC.*, 808 N.Y.S.2d 279, 280 (2d Dep't 2005) (citation omitted); *see also Town of Islip*, 245 F. Supp. at 428; *Taunus Corp. v. City of New York*, 279 F. Supp. 2d 305, 312 (S.D.N.Y. 2003) ("When a claim of nuisance is based on negligent conduct, the plaintiff will have to prove all the elements of negligence . . . .").

Moreover, courts may dismiss nuisance claims as duplicative where a nuisance "arises solely from negligence." *Murphy v. Both*, 84 A.D.3d 761, 763 (2d Dep't 2011). Because a

17

nuisance claim based on negligence concerns "a single wrong, whether characterized as negligence or nuisance," plaintiffs "may recover only once for harm suffered, regardless of how the causes of action are denominated." *Id*. (citations omitted); *see also Hanna v. Motiva Enters., LLC*, 839 F. Supp. 2d 654, 676 (S.D.N.Y. 2012) (dismissing a nuisance claim as duplicative). Given that Breitenbucher's nuisance claim sounds in negligence, it is dismissed as duplicative and because she has failed to establish a public or private nuisance as a matter of law.

## CONCLUSION

For the reasons set forth above, Wal-Mart's motion for summary judgment, (Doc. No. 18), is granted. The Clerk of the Court is respectfully directed to enter judgment in favor of Wal-Mart, and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       May 18, 2020

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge